IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| STATE OF ALABAMA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION 08-0182-WS-C |
| ) | |
| UNITED STATES OF AMERICA, et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER**

This action involves a challenge by the plaintiff State of Alabama ("the State") to certain regulations ("the Regulations") promulgated by the defendant Secretary of the Department of the Interior ("the Secretary") addressing Indian gaming under the Indian Gaming Regulatory Act ("IGRA"). The other defendants include the United States of America and the United States Department of the Interior (collectively, "the federal defendants"), as well as intervenor-defendant Poarch Band of Creek Indians ("the Tribe"). The matter is before the Court on the motions to dismiss filed by the federal defendants and the Tribe (collectively, "the defendants"). (Docs. 22, 23). The parties have filed briefs in support of their respective positions, (Docs. 22, 23, 28-30, 33-35), and the motions are ripe for resolution. After carefully considering the foregoing and other relevant material in the file, the Court concludes that the motions to dismiss are due to be granted.

**BACKGROUND**

In 1988, Congress passed the Indian Gaming Regulatory Act ("IGRA") to address the issue of gambling on tribal land. 25 U.S.C. §§ 2701 et seq. The Act divides games into three classes, with Class III games (those other than traditional tribal games, bingo and related games, and certain card games) to be "conducted in conformance with a

Tribal-State compact entered into by the Indian tribe and the State." *Id*. § 2710(d)(1)(c).

IGRA sets forth an elaborate procedure for the development of a compact.  First, a tribe requests a state to enter into negotiations.  If the state fails to enter into negotiations within six months, or fails to negotiate in good faith, the tribe may sue the state in federal court.  Upon a judicial finding that the state has not negotiated in good faith, the court must order the state and tribe to conclude a compact within 60 days.  If they fail to do so, the court appoints a mediator, to whom the parties must submit their respective last, best offers, one of which the mediator selects.  The state is given 60 days thereafter to consent to the proposed compact selected by the mediator.  If it does not, "the Secretary shall prescribe, in consultation with the Indian tribe, procedures ... under which class III gaming may be conducted on the Indian lands over which the Indian tribe has jurisdiction."  25 U.S.C. § 2710(d)(3), (7).

The Tribe invoked this procedure in 1990.  The State entered into negotiations, but the Tribe eventually sued, claiming the State had not negotiated in good faith.  The State successfully argued that IGRA impermissibly infringes upon its Eleventh Amendment right not to be sued without its consent.  *Poarch Band of Creek Indians v. State of Alabama*, 776 F. Supp. 550 (S.D. Ala. 1991).  In an opinion consolidating the Alabama case with a Florida case, the Eleventh Circuit agreed, *Seminole Tribe v. State of Florida*, 11 F.3d 1016 (11th Cir. 1994), and the Supreme Court delivered the final, controlling word.  *Seminole Tribe v. Florida*, 517 U.S. 44 (1996).

In light of these developments, the Secretary in April 1999 promulgated the Regulations to establish how he would proceed to develop procedures for Class III gaming should a state stand on its Eleventh Amendment rights.  25 C.F.R. Part 291.  The Regulations:  provide for a tribe to ask the Secretary to issue gaming procedures if the state successfully invokes the Eleventh Amendment during the statutory process; identify information that a tribe's proposal must contain; and require the Secretary to perform several tasks, including: notifying the tribe whether it meets the eligibility criteria for

invoking the Regulations (including the state's successful interposition of the Eleventh Amendment); submitting the proposal to the state's governor and attorney general for comment; reviewing the tribe's proposal; identifying unresolved issues and areas of disagreement; inviting the tribe, governor and attorney general to attend an informal conference to resolve such issues and areas of disagreement; and issuing a final decision. Should the state submit a counterproposal, the Secretary must appoint a mediator, who selects between the parties' last, best offers, which the Secretary may accept or reject for specified reasons. In the latter event, the Secretary is to prescribe procedures for gaming that comport with the mediator's selected version as much as possible, as well as with IGRA and state law. *Id.* §§ 291.3 -.11.

      In April 1999, the State and the State of Florida filed suit against the federal defendants in the Northern District of Florida, challenging the freshly promulgated Regulations. (Doc. 33, Exhibit C). The federal defendants moved the Court to dismiss the action or stay the proceedings because the plaintiffs' challenge was not ripe for review and would remain so until the Secretary issued specific gaming procedures on a particular tribal proposal. (*Id.*, Exhibit D). The Court denied the motion in March 2000 but nevertheless suspended the action pending issuance of gaming procedures concerning two Florida tribes. (Doc. 34, Exhibit B). When progress lagged, the Court administratively closed the file and ultimately dismissed the case. (*Id.*, Exhibits A, D).

      In March 2006, the Tribe invoked the Regulations. In April 2006, the Secretary determined that the Tribe met the Regulations' eligibility requirements, forwarded the Tribe's proposal to the governor and attorney general, and invited comment and an alternative proposal. (Doc. 1 at 51). In July 2006, the State responded. (*Id.* at 61). It did not submit a counterproposal. (*Id.* at 70). The Secretary conducted an informal conference with the Tribe and the State in November 2006, limited to the scope of gaming allowed by the State. (*Id.* at 6, 70).

      In August 2007, the Fifth Circuit held that the Regulations exceed the Secretary's

statutory authority.  *Texas v. United States*, 497 F.3d 491, 511-12 (5th Cir. 2007), *cert. denied sub nom. Kickapoo Traditional Tribe v. Texas*, 129 S. Ct. 32 (2008).  In September 2007, the State requested the federal defendants either to dismiss the Tribe's application in light of *Texas*, or to hold it in abeyance pending Supreme Court resolution.  (Doc. 1 at 68).  The federal defendants did not respond to this request.  (*Id*. at 6).  In March 2008, the Secretary issued his preliminary determination on the scope of gaming, finding that the State allows electronic bingo and pari-mutuel wagering but does not allow non-banked card games.  (*Id*. at 77-80).  The Secretary proposed to resume the informal conference, (*id*. at 82), but the State filed this lawsuit on April 7, 2008.  (Doc. 1).

The complaint describes the State as aggrieved by the Secretary's "action in adopting and implementing" the Regulations.  (Doc. 1 at 1).  The complaint alleges that the Regulations exceed the Secretary's authority under IGRA and/or unconstitutionally delegate legislative power to the executive in violation of the separation-of-powers doctrine.  (Doc. 1 at 12-15).  The State seeks a declaration to that effect, as well as a stay of administrative proceedings concerning the Tribe's application, pending entry of a permanent injunction against implementation or enforcement of the Regulations.  (*Id*. at 12-15).[1]  The State seeks relief under the Administrative Procedures Act ("APA") and the Declaratory Judgments Act.  (*Id*. at 12-13).

## DISCUSSION

The motions to dismiss raise several arguments: statute of limitations; lack of final agency action; lack of ripeness; lack of exhaustion; and lack of standing.  These related concepts must be applied as necessary with respect to two occurrences: the adoption of the Regulations in 1999; and the application of the Regulations in and after 2006.

---

[1] The defendants shortly thereafter agreed to forego any action on the Tribe's request under the Regulations until this litigation is resolved.  (Doc. 14 at 2).

## I. Adoption of the Regulations.

The defendants acknowledge that it is possible to judicially challenge a regulation upon its promulgation.[2] They argue, however, that any such challenge to the 1999 promulgation of the Regulations is barred by the statute of limitations. As the parties recognize, the applicable statute of limitations is that contained in 28 U.S.C. § 2401(a), which provides in pertinent part that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."[3]

### A. Final Agency Action.

Under the APA, "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. No statutory provision cited to the Court makes the Regulations subject to judicial review, so the State's ability to challenge either their adoption or their application depends on the existence of a final agency action. If there is no final agency action, there can be no judicial review.[4] Likewise, until there is a final

---

[2]*See, e.g., Dunn-McCampbell Royalty Interest, Inc. v. National Park Service*, 112 F.3d 1283, 1287 (5th Cir. 1997) ("On a facial challenge to a regulation, the limitations period begins to run when the agency publishes the regulation in the Federal Register.").

[3]*E.g., United States Steel Corp. v. Astrue*, 495 F.3d 1272, 1280 (11th Cir. 2007) ("Because this claim for review is brought under the APA and the Coal Act does not provide a statute of limitations, this action is barred unless filed within six years of the final agency action," citing Section 2401(a)).

[4]*E.g., Dalton v. Specter*, 511 U.S. 462, 469 (1994) ("The APA provides for judicial review only of final agency action.") (emphasis and internal quotes omitted); *accord United States Steel*, 495 F.3d at 1280; *Wilderness Society v. Alcock*, 83 F.3d 386, 388 n.5 (11th Cir. 1996). Absent a final agency action, the Court lacks subject matter jurisdiction. *E.g., Tennessee Valley Authority v. Whitman*, 336 F.3d 1236, 1247-48 (11th Cir. 2003); *National Parks Conversation Association v. Norton*, 324 F.3d 1229, 1240 (11th Cir. 2003).

agency action the right of action does not accrue and the limitations period does not begin to run.[5]

All parties agree that the promulgation of the Regulations constituted a final agency action for purposes of Section 704. (Doc. 22 at 12; Doc. 23 at 8-9; Doc. 28 at 8 n.4). The Court will not look behind the parties' conclusion.[6]

### B. Ripeness - 1999.

The defendants, as well as the federal defendants in the Florida action, have consistently asserted that the State's challenge to the Regulations was not ripe in 1999, is not ripe now, and will not be ripe until the federal defendants issue procedures governing Class III gaming by the Tribe. (Doc. 34 at 10, 13-14; Doc. 35 at 9). The State agrees that its challenge was not ripe in 1999. Again, the Court accepts the parties' conclusion.[7]

---

[5]*E.g., United States Steel*, 495 F.3d at 1280-81 ("The statute of limitations period begins to run once the agency has issued a 'final agency action.'"); *P&V Enterprises v. United States Army Corps of Engineers*, 516 F.3d 1021, 1023 (D.C. Cir. 2008) (for purposes of Section 2401(a), "[t]he right of action first accrues on the date of the final agency action.") (internal quotes omitted); *Jersey Heights Neighborhood Association v. Glendening*, 174 F.3d 180, 186-87 (4th Cir. 1999); *Sierra Club v. Slater*, 120 F.3d 623, 631 (6th Cir. 1997).

[6]*But see, e.g., National Parks Conservation Association*, 324 F.3d at 1237 ("By contrast, the Supreme Court has defined a nonfinal agency order as one that does not itself adversely affect the complainant but only affects his rights adversely on the contingency of future administrative action.") (internal quotes omitted).

[7]"[A] regulation is not ordinarily considered the type of agency action 'ripe' for judicial review under the APA until [there is] some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 891 (1990). The primary exceptions arise when a particular statute renders concrete action and harm unnecessary to judicial review, and when the regulation "as a practical matter requires the plaintiff to adjust his conduct immediately." *Id.*; *accord National Park Hospitality Ass'n*, 538 U.S. at 808. The parties identify no provision of IGRA that dispenses with these requirements for ripeness, and the mere promulgation of the Regulations did not require the State to adjust

### C. Statute of Limitations.

Although couched as part of a judicial estoppel argument, the State has asserted that the statute of limitations cannot run before its challenge becomes ripe. (Doc. 28 at 11-12). This appears to be a correct statement of law. *E.g., Qwest Communications International, Inc. v. Federal Communications Commission*, 240 F.3d 886, 895 (10th Cir. 2001) ("A time limitation on petitions for review [of agency action], it should be apparent, can run only against challenges ripe for review.") (internal quotes omitted); *accord City of Fall River v. Federal Emergency Regulatory Commission*, 507 F.3d 1, 7 (1st Cir. 2007); *Federal Express Corp. v. Mineta*, 373 F.3d 112, 119 (D.C. Cir. 2004).

These cases are specific examples of the general rule that, "[f]or limitation of actions, a cause accrues when it is sufficiently ripe that one can maintain suit on it." *Whittle v. Local 641*, 56 F.3d 487, 489 (3rd Cir. 1995); *accord Somoza v. New York City Department of Education*, 538 F.3d 106, 115 (2nd Cir. 2008); *Franks v. Ross*, 313 F.3d 184, 194 (4th Cir. 2002); *Biddison v. City of Chicago*, 921 F.2d 724, 728-29 (7th Cir. 1991).

Both the Supreme Court and the Eleventh Circuit support this view. "Unless Congress has told us otherwise in the legislation at issue, a cause of action does not become 'complete and present' for limitations purposes until the plaintiff can file suit and obtain relief." *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp.*, 522 U.S. 192, 200 (1997). "The question presented in *Bay Area Laundry* was whether a statute of limitations could commence to run on one day while the right to sue ripened on a later day. We answered that question, 'no,' unless the statute indicates otherwise." *TRW, Inc. v. Andrews*, 534 U.S. 19, 34 n.6 (2001). Thus, the Eleventh Circuit, after equating maturity with ripeness, held that, "[i]n suits for deprivation of property under section 1983, the same considerations that render a claim premature prevent accrual of a

---

its conduct immediately.

claim for limitations purposes ...." *Corn v. City of Lauderdale Lakes*, 904 F.2d 585, 588 (11th Cir.1990) (internal quotes omitted); *see also Bell v. Aerodex, Inc*., 473 F.2d 869, 873 (5th Cir. 1973) ("Ordinarily, a cause of action accrues when the plaintiff could first have successfully maintained a suit based on that cause of action.").[8]

The same principles apply to claims subject to Section 2401(a). "A cause of action against an administrative agency 'first accrues,' within the meaning of § 2401(a), as soon as (but not before) the person challenging the agency action can institute and maintain a suit in court." *Spannaus v. United States Department of Justice*, 824 F.2d 52, 56 (D.C. Cir. 1982); *accord Trafalgar Capital Associates, Inc. v. Cuomo*, 159 F.3d 21, 35 (1st Cir. 1998). Indeed, "[t]hat a statute of limitations cannot begin to run against a plaintiff before the plaintiff can maintain a suit in court seems virtually axiomatic." *Spannaus*, 824 F.2d at 56 n.3.[9]

All of these cases support the proposition that a cause of action does not accrue, so as to trigger the limitations period, until the claim is ripe for judicial resolution. The defendants offer not a single case to the contrary. The federal defendants note simply that the statute of limitations and ripeness are "separate, though related, doctrines," (Doc. 33 at 9), which is correct as far as it goes but which says nothing at all about whether the

---

[8]As noted, one cannot "maintain" an action until it is "sufficiently ripe." *Whittle*, 56 F.3d at 489; *see also Palazzolo v. Rhode Island*, 533 U.S. 606, 628 (2001) ("A challenge to the application of a land-use regulation ... does not mature until ripeness requirements have been satisfied ...; until this point an inverse condemnation claim alleging a regulatory taking cannot be maintained."). Thus, in order to successfully maintain a suit under *Bell*, so as to begin the limitations period, the claim must be ripe.

[9]To the uncertain extent the Tribe suggests these cases say nothing about the relationship between ripeness and accrual for limitations purposes, (Doc. 34 at 11-12), it offers no clear explanation and ignores the cases cited herein making explicit that the ability to maintain a suit requires ripeness. It also ignores the cases, from the same jurisdictions as *Spannaus* and *Trafalgar*, making explicit that "[a] time limitation on petitions for review ... can run only against challenges ripe for review." *City of Fall River*, 507 F.3d at 7; *Federal Express Corp.*, 373 F.3d at 119.

limitations period can begin to run before a claim is ripe.

As noted, the defendants insist that the State has never had a ripe claim. Because ripeness is a necessary predicate to the running of the limitations period, and because the defendants deny that ripeness has ever existed, the State's challenge to the promulgation of the Regulations cannot be barred by the statute of limitations.[10]

### D. Ripeness - 2006.

The State argues that its challenge became ripe in April 2006, when the Secretary determined that the Tribe met the eligibility requirements for consideration of gaming procedures under the Regulations, or in March 2008, when he denied (by ignoring) the State's request to dismiss the Tribe's application. (Doc. 28 at 14). If the State is correct, its challenge is timely. Otherwise, the challenge is premature and must be dismissed without prejudice. *E.g., National Advertising Co. v. City of Miami*, 402 F.3d 1335, 1341 (11th Cir. 2005); *Georgia Advocacy Office v. Camp*, 172 F.3d 1294, 1299 (11th Cir.1999). In that event, as the defendants acknowledge, the State's challenge will be ripe upon the Secretary's prescription of procedures to govern Class III gaming by the Tribe.

"Ripeness is a justiciability doctrine designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial

---

[10] Even had the limitations period begun to run in 1999 and expired before 2008, the State would not on that account be precluded from challenging the Regulations, as addressed in Part II. A substantive challenge to regulations — including allegations, like the State's, that the regulations exceed statutory or constitutional authority — can be brought outside the statutory period measured from promulgation. *E.g., Legal Environmental Assistance Foundation, Inc. v. Equal Protection Agency*, 118 F.3d 1467, 1473 (11th Cir. 1997) ("[I]n the course of reviewing EPA's order denying LEAF's petition, over which our jurisdiction is not questioned, we also have jurisdiction to entertain LEAF's contention that the regulations upon which EPA relies are contrary to statute and therefore invalid, regardless of the fact that LEAF's challenge is brought outside the statutory period for a direct challenge to the regulations.").

interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *National Park Hospitality Association v. Department of the Interior*, 538 U.S. 803, 807-08 (2003) (internal quotes omitted).

"Determining whether administrative action is ripe for judicial review requires us to evaluate (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration." *National Park Hospitality Ass'n*, 538 U.S. at 808.  In assessing fitness, the defendants request the Court to consider the following: (1) the Regulations establish only a framework to guide future decision-making; (2) deferring consideration may obviate the need for judicial review; and (3) judicial review would be assisted by factual development.  (Doc. 22 at 13-18; Doc. 23 at 14-15).

The defendants' first consideration may adequately explain why the mere issuance of the Regulations did not support a ripe challenge to them, but it does not address whether the State's challenge became ripe upon the federal defendants' utilization of the Regulations to guide decision-making in response to the Tribe's request.  As the defendants have not fleshed out this argument, the Court will not explore it further.

"A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotes omitted).  Thus, Texas' claim that appointing a master or management team to oversee an under-performing school district would not violate Section 5 of the Voting Rights Act was not ripe, since any number of sequential contingencies would have to occur before a master or management team were appointed. *Id*.  The defendants suggest that this consideration weighs against fitness because, after all, the Secretary might ultimately issue gaming procedures for the Tribe that the State accepts, or the State might decide to enter a compact with the Tribe.  Given the State's implacable resistance to Indian gaming over an 18-year period, any such possibility appears merely theoretical, but in any event it misses the point.  The State's claim is not only that utilization of the Regulations may someday result in Class III gaming in

Alabama (although that is clearly the focus of the complaint), but that utilization of the Regulations has impelled the State to participate in an illegal procedure. (Doc. 28 at 13-15). That is not a possible future event but an historical and existing one.

Even when the question presented is "purely legal," a case is not fit for judicial review if "further factual development would significantly advance our ability to deal with the legal issues presented ...." *National Park Hospitality Ass'n*, 538 U.S. at 812 (internal quotes omitted). The issues of whether the Regulations exceed statutory authority or represent an unconstitutional delegation of legislative authority to the executive are presumably legal ones, but to establish them the State invokes matters that can be fully considered only on a factual record developed in the underlying administrative proceedings. The State complains that the Regulations are infirm in part because the Secretary, although nominally objective, will not be so because he owes a fiduciary duty to the Tribe, and because the Secretary, since the Regulations do not expressly require it, will not consider the State's public policy on (against) gambling. (Doc. 1, ¶¶ 24, 27). These are hypotheticals the accuracy and significance of which can best be evaluated in light of the Secretary's actual conduct in entertaining the Tribe's request for gaming procedures.[11]

In sum, because further factual development would significantly advance the Court's ability to deal with the legal issues presented, the State's challenge to promulgation of the Regulations is not fit for judicial review.[12]

---

[11]While the Court in *Texas* concluded that "[a]dditional fact-finding would not aid our inquiry into the purely legal question of [the Regulations'] validity," 497 F.3d at 499, there is no indication that the plaintiff therein made assertions like those described above.

[12]In its reply brief, the Tribe suggests that accepting judicial review would "interfere with the further consideration by the Secretary of the Tribe's application under the regulations." (Doc. 29 at 12). By this the Tribe apparently attempts to invoke *Ohio Forestry Association, Inc. v. Sierra Club*, 523 U.S. 726 (1998), which considered as part of its ripeness inquiry whether judicial review "inappropriately interfere[s] with further administrative action." *Id*. at 733. Because the argument was raised first in reply, the

The State acknowledges that, in order to establish ripeness, it must show both fitness for judicial review and some threshold level of legally cognizable hardship if such review is denied. (Doc. 28 at 13-14).[13] The State identifies the hardship to itself as "being subjected to invalid Regulations." (*Id*. at 15). More precisely, "[d]elaying review

---

Tribe cannot rely on it. *E.g., Mariano v. Potter*, 2006 WL 907772 at *3 & n.6 (S.D. Ala. 2006 ) (citing cases).

At any rate, "inappropriate interference" under *Ohio Forestry Ass'n* apparently occurs only when judicial action "could hinder agency efforts to refine its policies." 523 U.S. at 735; *see, e.g., Texas Independent Producers and Royalty Owners Association v. United States Environmental Protection Agency*, 413 F.3d 479, 483 (5th Cir. 2005) (inappropriate interference found when judicial review "would necessarily prematurely cut off EPA's interpretive process," where the agency was still considering modifications to its challenged position). The administrative decisions attacked by the State here are the promulgation of the Regulations, the determination that the Tribe is eligible for consideration under them, and the refusal to end consideration of the Tribe's application in light of the Fifth Circuit's decision in *Texas*. The defendants do not suggest that any of these decisions are subject to refinement in the course of additional agency proceedings.

[13]This is the clear majority view. *Compare Nebraska Public Power District v. MidAmerican Energy Co.*, 234 F.3d 1032, 1038 (8th Cir. 2000) ("A party seeking judicial relief must necessarily satisfy both prongs to at least a minimal degree."); *Central and South West Services, Inc. v. United States Environmental Protection Agency*, 220 F.3d 683, 690 ("This Court has held ... that even where an issue presents purely legal questions, the plaintiff must show some hardship in order to establish ripeness."); *Ernst & Young v. Depositors Economic Protection Corp*., 45 F.3d 530, 535 (1st Cir. 1990) ("In line with the majority view, we hold that both prongs of the test ordinarily must be satisfied in order to establish ripeness."); *and Cedars-Sinai Medical Center v. Watkins*, 11 F.3d 1573, 1581 (Fed. Cir. 1993) ("Both prongs must be satisfied before an Article III court may apply its adjudicative powers to a case's merits.") *with AT&T Corp. v. Federal Communications Commission*, 349 F.3d 692, 700 (D.C. Cir. 2003) ("[W]here there are no institutional interests favoring postponement of review, a petitioner need not satisfy the hardship prong."). The Eleventh Circuit has issued no definitive statement, but it has noted a leading commentator's conclusion that Supreme Court precedents "seem to indicate that both requirements must be met." *Pittman v. Cole*, 267 F.3d 1269, 1280 n.8 (11th Cir. 2001) (internal quotes omitted). Of course, since there are institutional interests favoring postponement of review, a showing of hardship would be required in this case even under the minority view.

of this process will cost the State additional time, money, and resources by requiring it to devote its attention to procedures that have already been determined by the Fifth Circuit to be invalid." (*Id*. at 14).

"[H]ardship ... does not mean just anything that makes life harder." *Natural Resources Defense Council v. Abraham*, 388 F.3d 701, 706 (9th Cir. 2004). Thus, for example, "mere uncertainty as to the validity of a legal rule [does not] constitut[e] a hardship for purposes of the ripeness analysis," because under such a regime "courts would soon be overwhelmed" with requests. *National Park Hospitality Ass'n*, 538 U.S. at 811.

The State argues only that litigating now will be easier and cheaper than allowing the administrative process to run its course and then litigating. That precise hardship argument has already been rejected by the Supreme Court in *Ohio Forestry Association, Inc. v. Sierra Club*, 523 U.S. 726 (1998), where the Court emphasized that it "has not considered this kind of litigation cost saving sufficient by itself to justify review in a case that would otherwise be unripe." *Id*. at 735; *accord Natural Resources Defense Council*, 388 F.3d at 707; *Clear Air Implementation Project v. Environmental Protection Agency*, 150 F.3d 1200, 1206 (D.C. Cir. 1998).

Given these principles, it necessarily follows that "[t]he burden of participating in future administrative ... proceedings does not constitute sufficient hardship to overcome the agency's challenge to ripeness." *AT&T Corp. v. Federal Communications Commission*, 349 F.3d 692, 702 (D.C. Cir. 2003). The rule is especially appropriate in this case, where the State is not required by law to engage in the administrative proceedings to begin with. Rather, the Regulations extend to the State the voluntary option of providing input as the Secretary develops gaming procedures that have yet to be finalized. The State is thus in essentially the same position as any entity interested in a proposed rule or regulation published in the Federal Register. It may participate in the making of public comments for the agency's consideration as it refines its proposal, or it

may choose not to do so and risk a less satisfactory final rule, but it would be a strange world indeed if it could select neither option and instead take the agency to court to avoid no greater hardship than the expense and aggravation of utilizing the public comment period.

According to the State, the Fifth Circuit in *Texas* embraced precisely this approach.  There, the Court concluded that, "[i]f Texas cannot challenge the Procedures in this lawsuit, the State is forced to choose one of two undesirable options: participate in an allegedly invalid process that eliminates a procedural safeguard promised by Congress, or eschew the process with the hope of invalidating it in the future, which risks the approval of gaming procedures in which the state had no input."  497 F.3d at 499.  In reaching its decision, the Fifth Circuit cited none of the authorities or principles noted above.  Instead, it concluded that Texas was "'force[d] ... to modify [its] behavior in order to avoid future adverse consequences,'" demonstrating hardship in a manner approved by the Supreme Court.  497 F.3d at 499 (quoting *Ohio Forestry Ass'n*, 523 U.S. at 734).  The *Ohio Forestry Ass'n* Court, in turn, cited *Abbot Laboratories v. Gardner*, 387 U.S. 136 (1967).

The behavior to which the Supreme Court's jurisprudence refers, however, is limited to "primary conduct," *National Park Hospitality Ass'n*, 538 U.S. at 810 (citing *Ohio Forestry Ass'n* and *Abbot Laboratories*),[14] which does not include an entity's behavior in an administrative context.  Rather, primary conduct addresses such matters as "when contracts must be negotiated, ingredients tested or substituted, or special records compiled."  *Toilet Goods Association v. Gardner*, 3878 U.S. 158, 164 (1967).  Primary

---

[14]*Accord Franklin Federal Savings Bank v. Director, Office of Thrift Supervision*, 927 F.2d 1332, 1338 (6th Cir. 1991) ("The focus of the hardship inquiry is on whether an agency position would affect the 'primary conduct' of the party seeking judicial review."); *United Distribution Cos. v. Federal Emergency Regulatory Commission*, 88 F.3d 1105, 1183 (D.C. Cir. 1996) (in determining "whether delay in review would cause significant hardship," plaintiffs "must show a direct and immediate effect on their primary conduct") (internal quotes omitted).

conduct is not implicated when the regulation "leaves [the complainant] free to conduct its business as it sees fit." *National Park Hospitality Ass'n*, 538 U.S. at 810.[15]  The opportunity to participate in an agency's framing of procedures does not impact the State's primary conduct any more than any citizen's engagement in public comment does so.

In sum, a wealth of appellate and Supreme Court cases support the conclusion that the State will suffer no legally cognizable hardship if judicial review is delayed.  To whatever extent *Texas* represents a supportable alternative view, the Court rejects it in favor of the clear majority position.

### E.  Standing and Exhaustion.

Because the State's challenge to the promulgation of the Regulations is not ripe and must be dismissed on that basis, the Court pretermits consideration of the remaining arguments asserted by the defendants.

## II.  Application of the Regulations.

The State's challenge to the application of the Regulations in and after 2006 fails because, as discussed in Part I.D, the challenge is not ripe.  Moreover, in order to challenge the application of the Regulations, the State must establish the existence of a final agency action applying them.  *See* Part I.A, *supra*.  The defendants deny that any such final agency action has occurred.

The State identifies two final agency actions: (1) the federal defendants' conclusion that the Tribe is eligible to invoke the Regulations; and (2) their refusal (implied by silence in the face of the State's request) to dismiss the Tribe's request on the strength of the Fifth Circuit's decision in *Texas*.  (Doc. 28 at 7-8, 10).  The only effect of

---

[15]Thus, hardship was found in *Abbott Laboratories*, where the regulation required immediate changes in prescription labeling and so had "a direct effect on the day-to-day business of all prescription drug companies," 387 U.S. at 152, that is, on their primary conduct.

these administrative determinations is that the agency proceedings continue. "It is firmly established that agency action is not final merely because it has the effect of requiring a party to participate in an agency proceeding." *Mobil Exploration & Producing, Inc. v. Department of Interior*, 180 F.3d 1192, 1199 (10th Cir. 1999) (internal quotes omitted).[16] The State insists that these rulings were final with respect to the limited issues they resolved, but "[t]he fact that a statement may be definitive on some issue is insufficient to create a final action subject to judicial review." *Hale v. Norton*, 476 F.3d 694, 697 (9th Cir. 2007) (internal quotes omitted).

All of these rulings spring from *Federal Trade Commission v. Standard Oil Co.*, 449 U.S. 232 (1980), in which the Commission's statement of "reason to believe" Standard Oil was in violation of the law "itself is a determination only that adjudicatory proceedings will commence," one "definitive [only] on the question whether the Commission avers reason to believe" there is a legal violation. *Id.* at 241. Although the burden of responding to the charges "is substantial, it is different in kind and legal effect from the burdens attending what heretofore has been considered to be a final agency action," *id.* at 242, consisting only of "the disruptions that accompany any major litigation." *Id.* at 243. Under *Standard Oil* and like cases, it is plain that the federal defendants have taken no "final agency action" applying the Regulations, absent which there can be no judicial review.

## CONCLUSION

For the reasons set forth above, the motions to dismiss are **granted**. This action is

---

[16]*Accord Hale v. Norton*, 476 F.3d 694, 697 (9th Cir. 2007); *National Association of Homebuilders v. U.S. Army Corps of Engineers*, 417 F.3d 1272, 1279 (D.C. Cir. 2005); *Home Builders Ass'n v. U.S. Army Corps of Engineers*, 335 F.3d 607, 616 (7th Cir. 2003); *see also Mississippi Chemical Corp. v. Equal Employment Opportunity Commission*, 786 F.2d 1013, 1018-19 (11th Cir. 1986) (commissioner's charge of discrimination, which initiated further agency proceedings, was not a final agency action).

**dismissed without prejudice**.

    DONE and ORDERED this 24th day of November, 2008.

                                                s/ WILLIAM H. STEELE
                                                UNITED STATES DISTRICT JUDGE